UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

MILTON D. MCDANIEL,

    Plaintiff,

  v.              Case No. 14-CV-1323

JEFFREY GILL,

    Defendant.

ORDER

  Milton McDaniel, a *pro se* plaintiff, filed a civil rights action pursuant to 42 U.S.C. § 1983, alleging that his civil rights were violated by defendant Jeffrey Gill. This case was originally assigned to the Honorable Rudolph T. Randa, who screened McDaniel's complaint pursuant to 28 U.S.C § 1915A(a) and allowed him to proceed with his claim that the defendant used excessive force against him in violation of the Eighth Amendment to the U.S. Constitution. Upon the consent of the parties pursuant to 28 U.S.C. § 636(c), the case was subsequently reassigned to this court. This matter is now before the court on Gill's motion for summary judgment. (ECF No. 32.)

  As a preliminary matter, the court grants Gill's motion for an extension of time to file his motion for summary judgment. (ECF No. 31.) Gill timely filed his motion on

August 6, 2015, but due to unexpected circumstances was not able to file his declaration in support of the motion until August 7, 2015. The one-day delay did not prejudice McDaniel.

In addition, McDaniel filed a "Motion to Strike the Defendant's Motion to Strike the Plaintiff's Summary Judgment" (ECF No. 37) and two separate filings that the court understands to be motions for summary judgment (ECF Nos. 38 and 41). Because none of these motions comply with the requirements of Local Civil Rule 56(b), to the extent McDaniel intended to move for summary judgment his motion is denied. *See* L. Civ. R 56(b)(1)(c)(3). That said, the court will construe McDaniel's filings as his response to Gill's motion for summary judgment.

For the reasons set forth below, the court grants Gill's motion.

## I. RELEVANT FACTS

The facts in this section are primarily taken from Gill's proposed findings of fact (ECF No. 34), which are admitted for the purpose of deciding Gill's summary judgment motion because McDaniel failed to respond to them. *See* Civil Local Rule 56(b)(4) (E.D. Wis.). Additional facts are taken from McDaniel's sworn complaint (ECF No. 1), which the Seventh Circuit Court of Appeals has instructed district courts to construe as an affidavit at the summary judgment stage. *Ford v. Wilson*, 90 F.3d 245, 246-47 (7th Cir. 1996).

McDaniel was confined at all times material to this action at Waupun Correctional Institution (WCI). Gill is employed by the Wisconsin Department of Corrections as a correctional officer at WCI.

On September 19, 2014, Gill was in the segregation common, which is the common area where all the wings begin, when he heard loud banging. Gill followed the noise to McDaniel's cell, where he found McDaniel laying on the floor and kicking his door. Gill instructed McDaniel to stop kicking the door. McDaniel said, "Give me my tray then," and started kicking the door again. (ECF No. 34, ¶7.)

Gill left to inform a sergeant, and the two of them returned to McDaniel's cell and informed him that they were moving him to A-range, which is where the more problematic inmates are housed. McDaniel complied, and Gill placed McDaniel in wrist restraints. (ECF No. 34, ¶8.)

The cell door was opened and Gill began to escort McDaniel without assistance from any other guard. Initially, McDaniel was compliant, however once they reached the segregation common area, McDaniel yelled "f-ck you guys," and faced towards the staff in the segregation common area. (ECF No. 34, ¶9.) Gill instructed McDaniel to face forward; McDaniel stated he could look wherever he wanted. Gill again instructed McDaniel to face forward; McDaniel stated, "I could do what I want." Gill instructed McDaniel a third time to face forward; McDaniel did not comply. (ECF No. 34, ¶10.)

For the staff's safety inmates are instructed to face forward while walking. It is a rule in the segregation handbook. Often, when an inmate attacks a staff member, the inmate will do a "target glance" to make the attack more effective. Through the target glance, an inmate will line up the location of the officer just prior to making an attack. If an inmate faces forward, there is no possibility for a target glance, which reduces the effectiveness of an attack. (ECF No. 34, ¶10.)

Gill states that he understood McDaniel's refusals to be a threat to his safety. McDaniel was defiant and increasingly agitated. He had disobeyed several orders, was swearing, and was upset. Gill states that, in his experience, circumstances like these present a potential for an assault and he felt that this is what McDaniel was preparing for. As such, Gill "decentralized" McDaniel to the floor to control the situation. Gill also called additional staff to assist with restraining McDaniel. (ECF No. 34, ¶11.)

McDaniel acknowledges that he refused to obey Gill's order to face forward but states that Gill used excessive force to slam him to the floor and put handcuffs on him "so hard." (ECF No. 1 at 4.)

Once McDaniel was on the floor, he began making statements such as, "Get your bit-h -sses off of me" and "If I wasn't in cuffs this would of never happened." McDaniel was resistive and agitated, so a call was made for the assistance of any staff in the area that could assist and help secure McDaniel. (ECF No. 34, ¶12.)

Once staff arrived, McDaniel was assisted to his feet and taken to a strip cell, where a strip search was performed. (ECF No. 34, ¶13.) He was then escorted to a cell in control status where he was observed every thirty minutes until he was released from control status later that day. (ECF No. 34, ¶14.) There are no notes in the observation of offender log indicating that McDaniel complained of an injury (ECF No. 34, ¶19), but McDaniel states that his wrist, finger, shoulder, and elbow were injured.

On that same day, McDaniel submitted a health request form for nasal spray but did not complain of any pain resulting from the incident. (ECF No. 34, ¶32.) The first time McDaniel mentioned any injury in relation to the incident was on October 9, 2015, when he submitted a health services form stating, "When CO gill [sic] used access [sic] of forces on me and now the side of my face hurts and the lower part of my back also." (ECF No. 34, ¶33.) Four days later McDaniel was seen by a nurse, who noted no facial swelling, erythema, or ecchymosis. (ECF No. 34, ¶34.) The nurse also noted that McDaniel rose from a sitting position with no halting movements and that he was able to bend and touch his toes. (ECF No. 34, ¶34.)

## II. SUMMARY JUDGMENT STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Ames v. Home Depot U.S.A.,*

5

Case 2:14-cv-01323-WED   Filed 10/23/15   Page 5 of 12   Document 42

*Inc.*, 629 F.3d 665, 668 (7th Cir. 2011). "Material facts" are those that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: "(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

### III. ANALYSIS

As a preliminary matter, the court notes that, in response to the defendants' summary judgment motion, McDaniel alleges that Gill acted inappropriately during a strip search. These allegations are not in his complaint, which does not even mention a strip search. It is true that, on January 12, 2015, after the court had already screened his complaint, McDaniel filed a "supplement" in which he makes these same strip search

allegations. (ECF No. 13.) However, the supplement was never properly before the court. If McDaniel wanted to add claims to his complaint, he was required to notify the court of that desire and comply with Federal Rule of Civil Procedure 15 and Local Civil Rule 15. He did not. "Although civil litigants who represent themselves ("pro se") benefit from various procedural protections not otherwise afforded to the attorney-represented litigant . . . pro se litigants are not entitled to a general dispensation from the rules of procedure . . . ." *Downs v. Westphal*, 78 F.3d 1252, 1257 (7th Cir. 1996). Because the supplement was not properly before the court, the court did not "screen" the allegations as required by 28 U.S.C. § 1915A, nor did the defendants have an opportunity to answer a strip search claim, engage in discovery on it, or file a dispositive motion on such a claim. Allowing McDaniel to proceed with such a claim now, would be prejudicial to the defendants.

Also, new claims cannot be introduced at the summary judgment stage. *See Auston v. Schubnell*, 116 F.3d 251, 255 (7th Cir. 1997) (holding that "it is too late in the day to be adding new claims" at the summary judgment stage); *see Insolia v. Philip Morris Inc.*, 216 F.3d 596, 606 (7th Cir. 2000) ("A plaintiff may not amend his complaint through arguments in his brief in opposition to a motion for summary judgment."). Thus, at this stage of the proceedings, McDaniel is limited to the excessive force claim contained in his complaint, and the court will disregard other claims raised in later filings.

The Eighth Amendment prohibits the "unnecessary and wanton infliction of pain on prisoners." *Outlaw v. Newkirk*, 259 F.3d 833, 837 (7th Cir. 2001) (citing *Hudson v. McMillian*, 503 U.S. 1, 5 (1992); *Estelle v. Gamble*, 429 U.S. 97, 102-03 (1976)). In cases involving a claim of excessive force, "the core judicial inquiry is whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Id.* (citing *Hudson*, 503 U.S. at 7).

Courts should examine "a variety of factors, including the need for application of force, the relationship between that need and the force applied, the threat reasonably perceived by the responsible officers, the efforts made to temper the severity of the force employed, and the extent of the injury suffered by the prisoner." *Id.* (citing *DeWalt v. Carter*, 224 F.3d 607, 619 (7th Cir. 2000). Although a plaintiff does not need to have a significant injury to state a claim for excessive force, *de minimus* uses of physical force generally do not rise to the level of a constitutional violation. *Id.* at 837-38.

When confronted with a disturbance, prison officials must make their decisions "in haste, under pressure, and frequently without the luxury of a second chance." *Hudson*, 503 U.S. at 6 (citations omitted). The Supreme Court has made clear that courts should show prison officials significant deference in how they exercise their judgment to maintain order, discipline, and institutional security. *Id*. (citing *Whitley v. Albers*, 475 U.S. 312, 321-22 (1986)). This "deference extends to a prison security measure taken in response to an actual confrontation with riotous inmates, just as it does prophylactic or

8
Case 2:14-cv-01323-WED   Filed 10/23/15   Page 8 of 12   Document 42

preventative measure intended to reduce the incidence of these or any other breaches of prison discipline." *Whitley*, 475 U.S. at 322.

"When an inmate refuse[s] to obey a proper order, he is attempting to assert his authority over a portion of the institution and its officials. Such refusal and denial of authority places the staff and other inmates in danger." *Lewis v. Downey*, 581 F.3d 467, 476-77 (7th Cir. 2009) (quoting *Soto v. Dickey*, 744 F.2d 1260, 1266-67 (7th Cir. 1984)). In those circumstances, a prison guard has only so many choices. *Soto*, 744 F.2d at 1267. If he cannot persuade the prisoner to obey the order, then some means, such as physical force, must be used to compel compliance. *Id*. The Seventh Circuit Court of Appeals has explained that a prison guard does not violate the constitution when he applies force after a prisoner disobeys a command that is designed to maintain order in the prison "[e]ven if it may appear in retrospect that the degree of force authorized or applied for security purposes was unreasonable" because "an error of judgment does not convert a prison security measure into a constitutional violation." *Guitron v. Paul*, 675 F.3d 1044, 1045-46 (7th Cir. 2012) (affirming dismissal of excessive force claim at screening in part because guard "did not use force until [inmate] disobeyed a command . . . ."); *see also Whitley*, 475 U.S. at 322 ("Unless it appears that the evidence, viewed in the light most favorable to the plaintiff, will support a reliable inference of wantonness in the infliction of pain . . ., the case should not go to the jury.").

McDaniel repeatedly disobeyed Gill's orders. First, he refused to stop kicking his cell door. He then refused multiple orders to face forward. As Gill explained, there are significant safety concerns when escorting prisoners and one way to better protect the prison guards from attack is to require prisoners to face forward. Gill was transporting McDaniel alone and McDaniel was loud, disrespectful, upset, and defiant. Gill believed he needed to control the situation, which he did by decentralizing McDaniel to the floor and calling for assistance.

Viewing the evidence in a light most favorable to the plaintiff (the non-moving party), the court concludes that Gill's use of force cannot support a reliable inference of wantonness in the infliction of pain. Gill decentralized McDaniel to the floor as a means of compelling McDaniel to comply with his repeated orders. *See Whitley*, 475 U.S. at 322; *Guitron*, 675 F.3d at 1046 ("Custodians must be able to handle, sometimes manhandle, their charges, if a building crammed with disgruntled people who disdain authority (that's how the prisoners came to be there, after all) is to be manageable."). Even if Gill's use of force may appear in retrospect to be greater than what was required, his error in judgment on that point will not convert the prison security measure he chose into a constitutional violation. The court therefore grants his motion for summary judgment.

**WHEREFORE, IT IS HEREBY ORDERED** that the defendant's motion for an extension of time to file a summary judgment motion (ECF No. 31) is **GRANTED**.

**IT IS FURTHER ORDERED** that the defendants' motion for summary judgment (ECF No. 32) is **GRANTED**.

**IT IS ALSO ORDERED** that the plaintiff's motions for summary judgment are **DENIED** (ECF No. 37, 38, 41).

**IT IS FURTHER ORDERED** that the Clerk of Court **DISMISS** this action and enter judgment accordingly.

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within **30 days** of the entry of judgment. *See* Federal Rule of Appellate Procedure 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. *See* Federal Rule of Appellate Procedure 4(a)(5)(A).

Under certain circumstances, a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **28 days** of the entry of judgment. The court cannot extend this deadline. *See* Federal Rule of Civil Procedure 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The court cannot extend this deadline. *See* Federal Rule of Civil Procedure 6(b)(2).

A party is expected to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.

Dated at Milwaukee, Wisconsin this 23rd day of October, 2015.

_____
WILLIAM E. DUFFIN
U.S. Magistrate Judge